**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 6 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

PAUL A. HARRIS,

      Defendant - Appellant.

No. 99-6115
(D.C. No. 98-CR-57)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.[**]

      Defendant-Appellant Paul A. Harris appeals from the sentence imposed

based upon his conviction of conspiracy to manufacture methamphetamine, 21

U.S.C. § 846.  Mr. Harris was sentenced, after an evidentiary hearing, to 121

months imprisonment and five years supervised release.  On appeal, Mr. Harris

contends that the district court should have applied the guidelines pertaining to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The cause is therefore ordered submitted without oral argument.

nominal methamphetamine, rather than methamphetamine (actual). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

Mr. Harris was arrested in a motel room containing chemicals and accouterments used in the manufacture of methamphetamine, though no completed samples of the drug were discovered. Mr. Harris admitted to the police that he had been manufacturing the drug, and told them the quantity of raw materials he had used. The trial court's estimates of quantity are based in part on these admissions.

The guidelines direct the sentencing court to use the greater of the offense levels determined either by the total weight of the mixture or substance containing methamphetamine ("nominal"), or the weight of the amphetamine itself contained in the mixture, based on its purity ("actual"). See USSG § 2D1.1(c) note B.

The nominal amount produced was estimated to be between 640 and 840 grams, resulting in an offense level of 32. Mr. Harris does not contest this calculation. Based on the evidence of the amount of materials Mr. Harris used, and assuming a purity level of 82-83%, the actual amount of pure amphetamine produced was estimated to be approximately 708 grams, resulting in an offense level of 34.[1] Mr. Harris challenges this latter amount, contending that the purity

_____

[1]The trial court found Mr. Harris to be eligible for a two level "Safety Valve" adjustment under U.S.S.G. § 5C1.2. Thus, the decision in this case will determine whether Mr. Harris ultimately has an offense level of 30 or 32.

of the substance he produced was unknown, and that the samples found in the motel room that were analyzed were found to be "substantially less than 80% concentration of methamphetamine."

The guidelines direct the sentencing court to estimate quantity if necessary. U.S.S.G. § 2D1.1 cmt. 12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). The sentencing court's factual findings concerning quantity are reviewed by this court for clear error. See United States v. Lopez, 100 F.3d 113, 120 (10th Cir. 1996). The government must prove the quantity of drugs for sentencing purposes by a preponderance of the evidence. See United States v. Sloan, 65 F.3d 861, 865 (10th Cir. 1995).

In this case, the district court relied on the testimony of an Oklahoma City Police Department detective to establish an approximation of actual methamphetamine produced. The detective testified that based on his experience, as well as conversations with chemists from the DEA and Oklahoma State Bureau of Investigation, the materials Mr. Harris admitted having possessed could produce approximately 864 grams of 82-83% pure methamphetamine, or approximately 708 grams of actual methamphetamine. He considered this to be a conservative estimate.

At the time of his testimony, the detective had participated in the

investigation of between 200-300 methamphetamine lab sites and had spent over five years with the DEA Task Force in Oklahoma City. He stated that he did not recall ever having seen a finished batch of methamphetamine that was below 80 percent pure, and that most of the batches he had seen were in the high 80s up to 98 percent pure.

Given the evidence before it, the district court did not commit clear error. The fact that the only samples found in Mr. Harris' motel room were substantially below 80 percent pure is not dispositive. The detective testified that the samples were consistent with waste material left over from the manufacturing process, and would not be indicative of the purity of the finished product. Finally, we note that even at a significantly lower purity than the already conservative estimate of 82-83% purity, Mr. Harris would still fall into the range specifying an offense level of 34.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge